Curia, per Dunkin', Ch.
The defendant, Mrs. Frazier, is in possession of certain slaves under a gift from her grand-father, Frederick Brown. Isabel, the mother of the slaves in controversy, was purchased by Brown at sheriff’s sales in 1812. She and her progeny have been in the undisturbed possession of Brown, or the defendant, from that time until the filing of this bill.
*111 The sale at which Brown became the purchaser, in 1812, was under an execution against one John Cowan, who had married the widow of Richard Griffin, deceased. Griffin had died, intestate, in 1799, leaving a widow and six children. We agree with the Chancellor, that “ the possession, without question or interruption, is traced by the evidence in Richard Griffin, from 1784 or ’5, until his death in 1799, and that on his decease, the title to the negroes wa.s in his personal representatives.” In fact, there is not a particle of testimony indicating either title or possession in any other person anterior to the death of Richard Griffin.
It is hardly necessary to say, that in order to protect the defendant, after this lapse of time, it would be presumed that partition was made of Griffin’s estate, and that Isabel had been allotted to his widow, who afterwards intermarried with Cowan. But, as it appears to the court, this is not left to presumption. Peter Gullat proved that a division of the negroes took place in 1811, between Cowan and wife, and the children of Richard Griffin, deceased, — that, on that occasion, Cowan and wife executed a deed to each of the children for two negroes by name, and that he, Gullat, with Leonard Sims, were subscribing witnesses to the deeds. These deeds were given in evidence at the hearing of the cause. Jincey Newman also proved that there was a division, — that “Mrs. Cowan’s (Griffin) children had two negroes each given off to them, and that Cowan and wife kept five negroes, among whom was Isabel.” William H. Newman proved the same.
The Chancellor reports, that at that time (November, 1811), Buckner and Nathan Griffin, the two eldest children, were just of age, and that John Cowan had been appointed guardian of the four minors, — that, in 1813, he executed a deed for another negro child named Agatha, to Agnes Griffin, — and that the negroes not set off to the Griffins, remained in the possession of Cowan.
Now it may be, that this partition was irregular, informal, and without any legal authority; but when it is recollected, that the youngest of the distributees is now more than 40 years of age, and that they took and kept possession of the negroes allotted to them severally, they would not now be heard to question its validity, much less to impeach the title of a bona fide purchaser from one of the parties. If there had been nothing more to consider, the Chancellor would have felt no difficulty in yielding to *112 his strong conviction of the justice of the case, by dismissing the complainants’ bill.
In February, 1800, Mrs. Griffin, with her brother, George Sims, was appointed to administer the estate of Richard Griffin, deceased. Isabel was appraised by them as part of his estate; and in March, 1801, she, Isabel, and her children, were sold by the administrators.
On the 5th March, 1802, Nathan Sims, the father of Mrs'. Griffin, executed a deed, by which he conveyed, in consideration of natural love and affection, seven negroes, including Daphna, and Isabel and her children, to his daughter, Mrs. Griffin, for life, and after her decease to be equally divided between the children she then had, or might have. The deed recites, that the negroes were then in her possession.
On the 10th September, 1803, six suits were brought by Cow-an and wife (he having, in the meantime, married Mrs. Griffin,) to recover the negroes from those who had purchased at the administrators’ sales. One of the suits was against George Sims to recover Isabel. At April term, 1804, a verdict was rendered for the plaintiffs. The other negroes, it seems, were given up, and the notes of the purchasers to the administrators for the price were surrendered.
We agree with the Chancellor, that the deed of Nathan Sims was manifestly fabricated to answer a purpose. He never had possession of the negroes or any title to them. The administrator, George Sims, who had made the sale, was one of the witnesses to the deed, and he was the only defendant in the suit in trover which was prosecuted to a termination. There are many other circumstances, detailed in the decree, indicating the unreal character of the whole transaction. But what were the motives of the parties, it is entirely impossible, at this distance of time, and after the death of all the actors in it, to determine, or even surmise, with any confidence. It may be, that the object was to defraud the creditors of Cowan, as is suggested by one of the witnesses, although it was a very awkward and ineffectual mode to effect such object. The more probable conjecture is, that the parties intended (as the deed provides) to secure the enjoyment of the entire property to Mrs. Griffin during her life, thereby postponing the claims of the children of Griffin to two-thirds, and, as a compensation, giving to them, with her other children, (if she should have others,) all the negroes on the determination of her life interest.
*113 But whatever was the motive of the parties, the success of the arrangement depended on the consent of others, who had not the power then to signify their assent, and who might, or might not, be thereafter willing to acquiesce in the arrangement. The children of Griffin were entitled to two-thirds of the negroes. When they became of age, they might concur in the arrangement, either as more advantageous to them, or from regard to their mother, or they might repudiate the arrangement, and insist on a partition of their negroes. If they had recognized the arrangement, either by any positive act of concurrence, or by waiting until their right of possession would accrue under the deed of Nathan Sims, it would not have been competent for Cowan, or any one claiming under him, to. gainsay or impeach that deed, or resist the exclusive right of the children of Mrs. Cowan to the negroes included in it.
But so far as the court can judge from the testimony, the children of Richard Griffin never acquiesced in this arrangement, or recognized this variation of their rights. So soon as the two elder children became of age, a partition was made among them all, without any reference to the deed of Nathan Sims, and precisely in the same manner as if no such instrument had ever been in existence. It is suggested, that this was by a surrender of Mrs. Cowan’s life estate. But the deeds made by Cowan and wife do not purport to be a surrender of her life estate; nor is there any thing in the testimony which would lead to the conclusion that any thing was contemplated but a partition of Richard Griffin’s estate among his distributees.
The deed of Nathan Sims was, then, of no force, because its validity depended on the consent - or approval of those who never gave it their assent; but on the contrary, by their acts, indicated their disposition not to be bound by it, and procured partition of the negroes as if the deed had never been made. It appears to the court, that those of the children of R. Griffin who are complainants in this suit, have no color of right for the claim now interposed by them.
But it is said, that though the Griffins have no right, the child of Mrs. Cowan by her last husband stands on a different footing — that, by bringing the actions of trover, Cowan and wife are estopped from denying the validity of Nathan Sims’ deed, and Wm. S. Cowan, their son, derives rights under that deed.
From the view taken by the court, the deed was valid, at least so far as Cowan and wife were concerned, when those suits *114 were instituted, and so continued, until, in 1811, the children of Griffin, by interposing their paramount claims, defeated the arrangement proposed to be eifected by the deed. From that time all the parties acted as if the deed of Sims was, as the decree has termed it, ‘ a fabrication.’ William S. Cowan is now 38 or 40 years of age. If he had any rights under Sims’ deed, he had an interest in all the negroes — those in possession of the Griffins, as well as those left with his mother. Yet no attempt has been made by him to secure the property, although two-thirds of it was absolutely conveyed by the tenant for life more than thirty years before the filing of this bill. The construction thus given by the court to the deed of Sims, and the conduct of the parties in reference to it, seems more consistent with reason than has been suggested; and it is consistent, too, with the supposition that no fraud was intended by those concerned in it.
The Chancellor, who heard the cause, while he sustained the bill, ordered the complainants to pay the costs, onerous as they were, of the proceedings, from a thorough conviction that the defence was meritorious. A majority of the court are of opinion that it was also well founded in law, and that the bill should have been dismissed.
It is ordered and decreed, that the decree of the circuit court be reversed, and that the bill be dismissed.
Johnson and Harper, CC. concurred.